# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| M & I BUSINESS CREDIT, LLC, *a Minnesota limited liability company*, | Civil No. 10-1660 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| GENIE INDUSTRIES, INC., *a Washington corporation*, | |
| Defendant. | |

---

Virginia A. Bell and Leora Maccabee, **MASLON EDELMAN BORMAN & BRAND, LLP,** 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, for plaintiff.

Jeff C. Grotta and Cary E. Hiltgen, **HILTGEN & BREWER, PC**, 9400 North Broadway Extension Suite 800, Oklahoma City, OK 73114; and Sarah E. Madsen, **LARSON KING, LLP**, 30 East 7th Street, Suite 2800, St. Paul, MN 55101, for defendant.

In foreclosing on a loan in the wake of a third party's default, plaintiff M&I Business Credit, LLC ("M&I") sought to collect collateral including accounts receivable by the third party from defendant Genie Industries, Inc. ("Genie"). M&I initiated this action when Genie refused to pay the amount due, and now moves the Court for summary judgment. For the reasons stated below, the Court grants summary judgment to M&I.

## BACKGROUND

M&I extended a loan to STS Manufacturing, Inc. ("STS"), a Minnesota steel fabricator. The loan was secured, in part, by STS' accounts receivable. Genie was STS'

largest client, procuring fabricated steel products from STS. At Genie's behest, STS generally bought raw steel from Genie; STS would then fabricate the raw steel and sell finished steel products to Genie.

Before agreeing to extend STS a line of credit, M&I obtained a Waiver of Offset Rights ("Waiver") from Genie. The Waiver runs approximately two and a half paragraphs long. The sum of its substantive content is as follows:

> You [Genie] purchase goods or services from Borrower [STS]. We [M&I] have been asked by Borrower to provide it with financing secured, in part, by an assignment of its accounts receivable, including those arising under its relationship with you. You may have the right to offset, against monies owing by you on particular receivables, claims arising out of other aspects of your relationship with Borrower, including, without limitation, providing raw materials to Borrower. Such a possibility makes it difficult for us to accept accounts receivable owing from you to Borrower as security for our loans.

> Accordingly, in order to induce us to accept, as collateral security for loans made by us to Borrower from time to time in our discretion, receivables which arise from goods or services sold to you (it being of benefit to you to have Borrower obtain such loans in order to perform its obligations to you) you agree that **any rights of offset**, for any claims that you may at any time have against Borrower, **shall be limited, in the case of each account receivable, to claims arising out of the specific transaction giving rise to such account receivable, and all other rights of offset are hereby waived**.

(Ex. A, Docket No. 17 (emphasis added).) On August 1, 2007, Genie's representative signed the Waiver.

STS eventually defaulted on the M&I loan. M&I subsequently filed suit against Genie for the amount of STS' account receivable owed by Genie when its attempts to collect on the collateral failed. Genie asserts that it may offset the amounts owed to STS by the amount owed to it for raw steel sales.

M&I has moved for summary judgment, arguing that Genie unambiguously waived its right to offset amounts STS owed to it for purchases of raw steel. Genie argues that the Waiver reflects its unambiguous retention of certain rights with respect to raw materials. It has not, however, filed a cross motion for summary judgment. Genie also argues, in the alternative, that if the Court concludes that the Waiver is ambiguous, M&I's motion for summary judgment should be continued until Genie can conduct additional discovery on extrinsic evidence of the parties' intent and the amount in question. Genie has filed a Rule 56(f) discovery motion contemporaneously with its opposition brief.

## ANALYSIS

### I.      Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     Genie Unambiguously Waived Its Offset Rights

The parties agree that the Court's attention is properly focused on the Waiver and that Minnesota law applies to its interpretation. In construing a contract under Minnesota law, a court must first decide whether the contract is ambiguous. *Thomsen v. Famous Dave's of Am., Inc.*, 606 F.3d 905, 908 (8th Cir. 2010). This determination presents a legal question. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). Courts may consider evidence outside the four corners of the contract "only if the contract is ambiguous on its face." *Hous. and Redev. Auth. of Chisholm v. Norman*, 696 N.W.2d 329, 337 (Minn. 2005). "A contract is ambiguous if it is susceptible to more than one interpretation based on its language alone." *Id.*

The Waiver is reasonably susceptible to only one interpretation: that Genie waived its right to offset from STS' account debt only "claims arising out of the specific transaction giving rise to such account receivable."[1] (Ex. A, Docket No. 17.) Genie agrees with this interpretation, but asserts that "the specific transaction giving rise to such account receivable" is Genie's sale of raw materials to STS.

Pursuant to the plain language of the Waiver, however, claims arising out of Genie's sale of raw materials to STS are precisely the claims Genie agreed to waive. As the first paragraph of the Waiver explains, Genie "may have the right to offset, against monies owing by [it] on particular receivables, claims arising out of other aspects of [its]

---

[1] At oral argument, Genie submitted evidence that was not included with the motion papers, and M&I objected. Because the Court concludes that the Waiver is not ambiguous, however, such extrinsic evidence is irrelevant to the Court's analysis.

relationship with [STS], **including, without limitation, providing raw materials to [STS]**." (*Id.* (emphasis added).) Because the possibility that Genie might assert such offset rights "makes it difficult for [M&I] to accept accounts receivable owing from you to [STS] as security[,]" Genie agreed to waive all offset rights **except for** those arising out of the specific transaction giving rise to account debt with STS. (*Id.*)

Courts must "construe a contract as a whole and attempt to harmonize all clauses of the contract. Because of the presumption that the parties intended the language used to have effect, [courts] will attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 525 (Minn. 1990) (internal citation omitted). Genie's interpretation of the Waiver would render meaningless the entire first paragraph, which clearly evinces the parties' intent that Genie waive its offset rights regarding its provision of raw steel to STS. It would also place the sentence describing what offset rights Genie is waiving in direct conflict with the language in the first paragraph.

Nothing in the Waiver suggests fluidity between sales from Genie to STS and sales from STS to Genie. To the contrary, the Waiver explicitly distinguishes between "accounts receivable owing from [Genie] to [STS]" and "claims arising out of **other aspects of your relationship with [STS], including . . . providing raw materials to [STS],]**" claims which might provide Genie the right to offset money it owes STS on particular receivables. (Ex. A, Docket No. 17 (emphasis added).)

Moreover, **Genie concedes that references in the Waiver to "account receivable" relate to STS' sales of steel products to Genie**. (Def.'s Resp. to Pl.'s Mot.

for Summ. J. at 6 ("STS's 'account receivable' was the running account of amounts **owed by Genie for finished goods** . . . .") (emphasis added), Docket No. 23.) Indeed, the Waiver itself clearly refers to "receivables which arise from goods or services sold **to [Genie]**," not goods or services sold **by Genie** to STS. (Ex. A, Docket No. 17 (emphasis added).) Contractual language "is to be given its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Considering Genie's sale of raw materials **to STS** "the specific transaction giving rise to . . . account[s] receivable" **by STS** would run afoul of this principle. Genie's sale of raw materials to STS logically gave rise to accounts receivable by Genie, not by STS.

Accordingly, the only reading of the phrase "claims arising out of the specific transaction giving rise to such account receivable" that comports with logic and principles of Minnesota contract interpretation is that of M&I. Through the executed Waiver, Genie plainly waived its offset rights arising from its provision of raw materials to STS. Genie did retain its offset rights with regard to claims arising out of STS' sale of finished products to it. Genie has not argued that it has any such claim, and there is no record evidence to support its existence. As a result, Genie's defense to M&I's claim for the full amount Genie owes STS on its account receivable is based on offset rights it clearly waived. The Court concludes that M&I is entitled to summary judgment and to

recover the full amount of STS' account receivable from Genie, $617,272.40 plus interest.[2]

According to Genie, M&I is not entitled to collect "interest and costs" as well as the amount of STS' account receivable. Under the Minnesota statute applicable to enforcement actions by secured parties, "[a] secured party may deduct from the collections . . . reasonable expenses of collection and enforcement, including reasonable attorneys fees and legal expenses incurred by the secured party." Minn. Stat. § 336.9-607(d). M&I is therefore not entitled to recover attorney fees and legal expenses in addition to the amount of STS' account receivable. Accrued interest on the amount of the account receivable, however, is properly considered part of the outstanding amount due.

## III. Defendant's Rule 56(f) Motion

Genie filed a Rule 56(f) Motion for Additional Discovery Necessary to Respond to Plaintiff's Motion for Summary Judgment contemporaneously with its brief opposing M&I's summary judgment motion. (Docket Nos. 23 & 26.) Since the Court has determined that M&I is entitled to summary judgment without reference to extrinsic evidence, Genie's motion is moot.

---

[2] M&I claims that the amount due is $620,537.17. However, it has agreed to concede the difference between that amount and the amount Genie asserted in its written submissions is due on the account debt. At oral argument, Genie attempted to introduce new arguments regarding the relevant amount. However, Genie has previously admitted that, before making any offsetting adjustments, the amount due to STS was $617,272.40. (Def.'s Rule 56(f) Mot. for Add. Disc. at ¶ 47, Docket No. 26; Aff. of Kristi Wahler at ¶ 3, Aug. 26, 2010, Ex. 1, Docket No. 28.)

Moreover, M&I had filed its motion for summary judgment on August 3, 2010, several months prior to the November 5, 2010 close of discovery. (Docket Nos. 13 & 14.) The Court continued the hearing on M&I's summary judgment motion from September 14, 2010 to December 7, 2010. Genie was thus essentially given the relief it requested in its Rule 56 motion, namely the opportunity to complete discovery before the disposition of M&I's motion. The discovery period has now expired, and Genie has not shown good cause for extending its deadline. (Order, Docket No. 52 (denying Genie's Motion for Extension of Discovery Schedule).)

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's Motion for Summary Judgment [Docket No. 14] is **GRANTED**; and

2.     Defendant's Rule 56(f) Motion for Additional Discovery [Docket No. 26] is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  January 25, 2011
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge